IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDICAL ADVOCATES FOR HEALTHY AIR, et al., | No. C 06-0093 SBA |
| Plaintiffs. | **ORDER** |
| v. | [Docket Nos. 9, 13] |
| STEPHEN L. JOHNSON, et al., | |
| Defendants. | |

This matter comes before the Court on San Joaquin Valley Unified Pollution Control District's (the "District") unopposed Motion to Intervene as Defendant. Having read and considered the arguments presented in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby GRANTS the District's Motion to Intervene as Defendant [Docket No. 9].

## BACKGROUND

**A.     Factual Background**

Plaintiff Medical Advocates for Healthy Air ("Healthy Air") is a California non-profit association based in Fresno. Complaint ("Compl.") at ¶ 8. Healthy Air is an advocate for the attainment of state and national health-based air quality standards and works to reduce the effects of air pollution within San Joaquin Valley (the "Valley"). *Id.*

Plaintiff Sierra Club is a national conservation organization incorporated in California with its headquarters in San Francisco, California. *Id.* at ¶ 9. Sierra Club works to protect and restore the environment, which includes reducing air pollution. *Id.*

Plaintiff Latino Issues Forum (the "Forum") is a California non-profit corporation with an office

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

in Fresno, California.  *Id.* ¶ 10.  The Forum works to advance public policy solutions to social, political, and environmental issues affecting California's Latino community, which include air quality issues.  *Id.*

Defendants Stephen L. Johnson ("Johnson") and Wayne Nastri ("Nastri") (collectively, "Defendants") are Administrators of the United States Environmental Protection Agency ("EPA").  *Id.* ¶¶ 13, 14.  The EPA prescribes national air quality standards and works with states, and regions within states, to maintain the national standards.  *Id.* ¶¶ 15, 18.  Defendants are responsible for implementing and enforcing various EPA standards.  *Id.* ¶ 13, 14.

Proposed Intervenor San Joaquin Valley Unified Air Pollution Control District (the "District") is a unified air pollution control district.  Under the Clean Air Act Amendments of 1990 ("CAA"), the District shares regulatory responsibility for air pollution with the EPA and the California Air Resources Board ("CARB").  Sadredin Decl. at ¶ 4.  Specifically, the District is charged with regulating stationary sources located within the San Joaquin Valley.  *Id.*  As part of this process, the District helps develop and enforce state implementation plans ("SIPs"),[1] which set forth measures that the local districts will follow to attain the national air quality standards.  *Id.*  The CAA also provides for EPA intervention to develop its own plan for a region in certain situations.  For example, if the EPA disapproves of a state or region's SIP, then the EPA must issue a federal implementation plan ("FIP") with substitute measures. 42 U.S.C. § 7410(c)(1).  However, if the area resubmits an SIP that corrects the deficiencies within two years of the EPA disapproval, then an FIP is no longer necessary.  *Id.*

On August 19, 2003, the State submitted a revised SIP ("2003 SIP").[2]  Compl. at ¶ 32.  The 2003 SIP allegedly contained "contingency measures,"[3] which the CAA additionally requires for those areas designated as nonattainment areas.[4]  Compl. at ¶¶ 32, 20.

---

[1]SIPs are the full set of state air quality measures that become federal law once approved by the EPA.  Compl. at ¶ 18.

[2]The August 19, 2003 SIP was intended to replace SIPs filed in 1994 and 1997 that the EPA had not approved.  Compl. at ¶ 31.

[3]Contingency measures are "backup control measures that will be implemented immediately in the event the planned control strategy fails." Compl. at ¶ 20.

[4]Nonattainment areas are those areas that do not meet national air quality standards.  Compl. ¶ 19.

**B.      Procedural Background**

On January 9, 2006, Plaintiffs filed a Complaint for Declaratory and Injunctive Relief against Defendants Johnson and Nastri in their official capacities as Administrators of the EPA.   In the Complaint, Plaintiffs allege that the EPA approved certain portions of the 2003 SIP, but failed to act on the contingency measures.   Compl. at ¶ 33.   Plaintiffs further assert that, by failing to act on the contingency measures within the 2003 SIP in a timely manner, the EPA failed, and continues to fail, in its federal mandate to maintain national air quality standards.   *Id.* ¶¶ 36-37.

On January 26, 2006, the District filed the instant Motion to Intervene and a proposed Answer to Plaintiff's Complaint.   The District's Motion to Intervene is unopposed.

## LEGAL STANDARD

Rule 24(a)(2) of the Federal Rules of Civil Procedure, which governs intervention as a matter of right, provides:

> Upon timely application anyone shall be permitted to intervene in an action: . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a).   Rule 24(a) is construed liberally in favor of potential intervenors.   *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir.2001) (citing *Forest Conservation Council v. United States Forest Service*, 66 F.3d 1489, 1493 (9th Cir.1995)).   Allowing parties with a practical interest in the outcome of a particular case to intervene often prevents or simplifies future litigation involving related claims, and, at the same time, allows an additional interested party to express its views before the court.   *Forest Conservation Council*, 66 F.3d at 1496 n. 8.

The Ninth Circuit applies a four-part test to evaluate motions for intervention under Rule 24(a):

> (1) the motion must be timely;

> (2) the applicant must have a significantly protectable interest relating to the property or transaction which is the subject of the action;

> (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and

> (4) the applicant's interest must be inadequately represented by the parties to the action.

United States District Court

For the Northern District of California

1  *Smith v. Marsh,* 194 F.3d 1045 (9th Cir. 1999).

2      Additionally, Rule 24(b)(2) of the Federal Rules of Civil Procedure, which governs permissive

3  intervention, provides:

> Upon timely application anyone shall be permitted to intervene in an action: .
> . . when an applicant's claim or defense and the main action have a question of
> law or fact in common . . . . In exercising its discretion the court shall consider
> whether the intervention will unduly delay or prejudice the adjudication of the
> rights of the original parties.

7  Fed. R. Civ. P. 24(b).

## ANALYSIS

9      In the present Motion, the District seeks leave to intervene in the instant action as a matter of

10  right, pursuant to Rule 24(a), or, alternatively, with the permission of the Court, pursuant to Rule 24(b).

11  **A.      Intervention as a Right**

12      **1.      Timeliness**

13      Timeliness is a threshold requirement for intervention. There are three criteria relevant to the

14  determination of timeliness: (1) the stage of the proceedings; (2) prejudice to other parties; and (3) the

15  reason for and length of the delay. *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984).  Here,

16  the District filed its Motion to Intervene before Defendants have responded to Plaintiffs' Complaint and

17  prior to the initial Case Management Conference.  As such, the Court finds that the timeliness factor has

18  been met.

19      **2.      Interest in the Action**

20      Whether an applicant for intervention demonstrates sufficient interest in an action is also a

21  "practical, threshold inquiry." *Berg*, 268 F.3d at 818. "No specific legal or equitable interest need be

22  established." *Id.* (quoting *Greene v. United States*, 996 F.2d 973, 976 (9th Cir.1993)).  It is generally

23  enough that the interest asserted "is protectable under some law, and that there is a relationship between

24  the legally protected interest and the claims at issue." *Id.* (quoting *Sierra Club v. United States EPA*,

25  995 F.2d 1478, 1484 (9th Cir.1993)).  "[T]he 'interest' test is primarily a practical guide to disposing of

26  lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due

27  process." *Forest Conservation Council*, 66 F.3d at 1496.  Further, potential adverse affect on a

28  government agency's regulatory interests has been held to constitute a sufficient interest requiring

4

intervention. *Id.* at 1496-97; *Scotts Valley Band of Pomo Indians v. U.S.*, 921 F.2d 924, 927-928 (9th Cir. 1990).

The District asserts that Plaintiffs' requested remedies will have a significant adverse effect on the District's interests. Specifically, Plaintiffs seek to force the EPA to either act on the 2003 SIP's contingency measures or to impose FIP contingency measures. The District also contends that Plaintiffs' prayer for relief will effectively usurp its authority to submit revised contingency measures. Additionally, the District contends that it has spent thousands of staff hours developing its current plan and that "it appears to be working." As such, the District argues that an FIP could conflict with the District's regulatory efforts, adversely affect the District's staffing and budgetary needs, and create confusing or duplicative measures. Moreover, should the EPA issue an FIP, the District argues that it will incur considerable expense in implementing the requirements.

Considering the District's intimate involvement in developing and implementing air quality standards, the Court finds that the District has a strong interest in the subject matter of the lawsuit.

**3.     Impairment of Ability to Protect Interest**

"If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Berg*, 268 F.3d at 822. Here, the District argues that, without intervention, it will not only have to silently accept any settlement or judgment issued, but will also have to implement the terms imposed as well. As such, the Court finds that the District's ability to protect its interests in the litigation would be impaired if it is not allowed to intervene.

**4.     Adequate Representation by Existing Party**

Finally, in determining whether a proposed intervenor's interests would be adequately represented by an existing party, the Court considers: (1) whether the interest of a present party is such that it will undoubtedly make all of the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect. *Berg*, 268 F.3d at 822 (quoting *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 838 (9th Cir.1996)). The burden of showing inadequacy is minimal, and the applicant need only show that representation of its interests by existing

5

parties "may be" inadequate. *Id.* at 823 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972)).

Here, the District argues that its interests are not identical to, and in some areas are adverse to, those of Defendants. For example, the District plans to assert that the revisions it adopted and submitted to the EPA on May 19, 2005[5] should be approved. Further, the District does not believe that the EPA will argue to uphold the District's revised contingency measures since it is unclear whether or not the EPA agrees with them. Additionally, the District's interests in its own regulatory powers is not necessarily a concern of the EPA.

Based on the aforementioned arguments, the Court finds that the District has sufficiently shown that Defendants may not adequately represent the District's interests in this litigation. Accordingly, since all of the factors of Rule 24(a) have been met, the Court hereby GRANTS the District's Motion to Intervene.

**B.      Permissive Intervention**

Since the Court finds that the District may intervene as a matter of right, the Court need not address permissive intervention. However, the Court notes that the District also qualifies for permissive intervention under Federal Rule 24(b)(2) because there is a "question of law or fact in common" between the District and the EPA's anticipated defenses. Further, although the District is not mentioned in Plaintiffs' Complaint, it is clear that the District is intricately involved in developing and implementing air pollution standards in the Valley. As such, its activities are a central focus of this litigation.

## CONCLUSION

IT IS HEREBY ORDERED THAT San Joaquin Valley Unified Air Pollution Control District's Motion to Intervene [Docket No. 9] is GRANTED.

///

///

///

---

[5]The District adopted revisions to the 2003 SIP on May 19, 2005, which included contingency measures. In addition, the District contends that it is submitting monitoring data to the EPA that shows that the Valley has attained federal air quality standards.

United States District Court

For the Northern District of California

IT IS FURTHER ORDERED THAT San Joaquin Valley Unified Air Pollution Control District's proposed Answer [Docket No. 13] shall be deemed filed as of the date of this Order.

IT IS SO ORDERED.

Dated: 3/6/06

SAUNDRA BROWN ARMSTRONG
United States District Judge

United States District Court
For the Northern District of California

7