United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEDICAL ADVOCATES FOR HEALTHY AIR, et al., | No. C 06-0093 SBA |
| Plaintiffs. | **ORDER** |
| v. | [Docket Nos. 48, 70] |
| STEPHEN L. JOHNSON, et al., | |
| Defendants. | |

This matter comes before the Court on Air Coalition Team's ("ACT") Motion to Intervene [Docket No. 48] and Defendants' Motion to Appear by Telephone at Hearing on Motion to Intervene [Docket No. 73]. Having read and considered the arguments presented in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby DENIES ACT's Motion to Intervene [Docket No. 48] and DENIES AS MOOT Defendants' Motion to Appear by Telephone at Hearing on Motion to Intervene [Docket No. 70].

**BACKGROUND**

Plaintiff Medical Advocates for Healthy Air ("Healthy Air") is a California non-profit association based in Fresno. Complaint ("Compl.") at ¶ 8. Healthy Air is an advocate for the attainment of state and national health-based air quality standards and works to reduce the effects of air pollution within San Joaquin Valley (the "Valley"). *Id.*

Plaintiff Sierra Club is a national conservation organization incorporated in California with its headquarters in San Francisco, California. *Id.* at ¶ 9. Sierra Club works to protect and restore the environment, which includes reducing air pollution. *Id.*

Plaintiff Latino Issues Forum (the "Forum") is a California non-profit corporation with an office

1 in Fresno, California. *Id.* ¶ 10. The Forum works to advance public policy solutions to social, political,
2 and environmental issues affecting California's Latino community, which includes air quality issues.
3 *Id.*

4 Defendants Stephen L. Johnson ("Johnson") and Wayne Nastri ("Nastri") (collectively,
5 "Defendants") are Administrators of the United States Environmental Protection Agency ("EPA"). *Id.*
6 ¶¶ 13, 14. The EPA prescribes national air quality standards and works with states, and regions within
7 states, to maintain the national standards. *Id.* ¶¶ 15, 18. Defendants are responsible for implementing
8 and enforcing various EPA standards. *Id.* ¶ 13, 14.

9 Intervenor San Joaquin Valley Unified Air Pollution Control District (the "District") is a unified
10 air pollution control district. Under the Clean Air Act Amendments of 1990 ("CAA"), the District
11 shares regulatory responsibility for air pollution with the EPA and the California Air Resources Board
12 ("CARB"). Sadredin Decl. at ¶ 4. Specifically, the District is charged with regulating stationary sources
13 located within the San Joaquin Valley. *Id.* As part of this process, the District helps develop and
14 enforce state implementation plans ("SIPs"),[1] which set forth measures that the local districts will follow
15 to attain the national air quality standards. *Id.* The CAA also provides for EPA intervention to develop
16 its own plan for a region in certain situations. For example, if the EPA disapproves of a state or region's
17 SIP, then the EPA must issue a federal implementation plan ("FIP") with substitute measures. 42 U.S.C.
18 § 7410(c)(1). However, if the area resubmits an SIP that corrects the deficiencies within two years of
19 the EPA disapproval, then an FIP is no longer necessary. *Id.*

20 On August 19, 2003, the State submitted a revised SIP ("2003 SIP").[2] Compl. at ¶ 32. The 2003
21 SIP allegedly contained "contingency measures,"[3] which the CAA additionally requires for those areas

---

[1] SIPs are the full set of state air quality measures that become federal law once approved by the EPA. Compl. at ¶ 18.

[2] The August 19, 2003 SIP was intended to replace SIPs filed in 1994 and 1997 that the EPA had not approved. Compl. at ¶ 31.

[3] Contingency measures are "backup control measures that will be implemented immediately in the event the planned control strategy fails." Compl. at ¶ 20.

2

designated as nonattainment areas.[4]  Compl. at ¶¶ 32, 20.

On January 9, 2006, Plaintiffs filed a Complaint for Declaratory and Injunctive Relief against Defendants Johnson and Nastri in their official capacities as Administrators of the EPA.  In the Complaint, Plaintiffs allege that the EPA approved certain portions of the 2003 SIP, but failed to act on the contingency measures.  Compl. at ¶ 33.  Plaintiffs further assert that, by failing to act on the contingency measures within the 2003 SIP in a timely manner, the EPA failed, and continues to fail, in its federal mandate to maintain national air quality standards.  *Id.* ¶¶ 36-37.

On January 26, 2006, the District filed a Motion to Intervene and a proposed Answer to Plaintiff's Complaint.  The District's Motion to Intervene was unopposed.  On March 6, 2006, the Court granted the District's Motion to Intervene.

On April 12, 2006, Plaintiffs filed a Motion for Partial Summary Judgment (hereinafter referred to as "Motion for Summary Judgment").[5]

On April 13, 2006, the Court issued an Order allowing California Air Resources Board ("CARB")[6] to intervene in the action, pursuant to the parties' stipulation.  Also on April 13, 2006, the Court held a Case Management Conference.  All of the parties, including intervenors CARB and the District, participated in the Case Management Conference.

On April 20, 2006, the Court issued an Order setting the hearing on Plaintiffs' Motion for Summary Judgment for June 27, 2006.  The Court also set forth a briefing schedule, such that the responses to the Motion for Summary Judgment would be filed by May 10, 2006 and Plaintiffs' reply would be filed by May 26, 2006.

---

[4] Nonattainment areas are those areas that do not meet national air quality standards.  Compl. ¶ 19.

[5] During the subsequent Case Management Conference, Plaintiffs explained that the Motion for Partial Summary Judgment was, in fact, a Motion for Summary Judgment intended to dispose of the entire case.

[6] CARB is the agency designated by state law as the air pollution control agency for all purposes under federal law.  *See* April 6, 2006 Stip. at p. 2.  CARB is charged with the responsibility of reviewing the rules, regulations, and programs of the local districts to determine whether they are sufficiently effective to attain the national ambient air quality standards.  *Id.*

On May 1, 2006, the Air Coalition Team ("ACT")[7] filed the instant Motion to Intervene and Proposed Answer. The Motion to Intervene was noticed for a June 6, 2006 hearing. On May 15, 2006, Plaintiffs filed an Opposition to ACT's Motion to Intervene.

## **LEGAL STANDARD**

### **A.  Intervention as a Right**

Rule 24(a)(2) of the Federal Rules of Civil Procedure, which governs intervention as a matter of right, provides:

> Upon timely application anyone shall be permitted to intervene in an action: . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a). Rule 24(a) is construed liberally in favor of potential intervenors. *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir.2001) (citing *Forest Conservation Council v. United States Forest Service*, 66 F.3d 1489, 1493 (9th Cir.1995)).

The Ninth Circuit applies a four-part test to evaluate motions for intervention under Rule 24(a):

> (1) the motion must be timely;
>
> (2) the applicant must have a significantly protectable interest relating to the property or transaction which is the subject of the action;
>
> (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and
>
> (4) the applicant's interest must be inadequately represented by the parties to the action.

*Smith v. Marsh,* 194 F.3d 1045 (9th Cir. 1999). Each of these factors must be satisfied in order to support a right to intervene. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).

### **B.  Permissive Intervention**

Rule 24(b)(2) of the Federal Rules of Civil Procedure, which governs permissive intervention,

---

[7]ACT is an unincorporated association/coalition formed for the purpose of promoting and protecting the interests of agriculture and related industries in relation to the development of regulations, legislation, and rules regarding air quality in California. Williams Decl. at ¶ 1. Members of ACT include, but are not limited to, the California Cotton Ginners and Growers Association, California Citrus Mutual, Western Plant Health, and the county farm bureaus of Madera, Fresno, Kings, Merced, Stanislaus, Tulare, and Kern. *Id.*

provides:

> Upon timely application anyone shall be permitted to intervene in an action: . . . when an applicant's claim or defense and the main action have a question of law or fact in common . . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b).

## **ANALYSIS**

In the present Motion, ACT seeks leave to intervene in the instant action as a matter of right, pursuant to Rule 24(a) or, alternatively, with the permission of the Court, pursuant to Rule 24(b).

**A.    Intervention as a Right**

**1.    Timeliness**

Timeliness is a threshold requirement for intervention. There are three criteria relevant to the determination of timeliness: (1) the stage of the proceedings; (2) prejudice to other parties; and (3) the reason for and length of the delay. *United States v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984). The question of timeliness is committed to the sound discretion of the Court. *Alaniz v. Tillie Lewis Foods*, 572 F.2d 657, 659 (9th Cir. 1978). The issue of prejudice to the existing parties is the most important consideration in deciding whether a motion for intervention is untimely. *Oregon*, 745 F.2d at 552. "[C]ourts have emphasized the seriousness of the prejudice which results when relief from long-standing inequities is delayed." *Alaniz*, 572 F.2d at 659.

Here, the timeliness factor is clearly not met. First, although the Complaint was filed on January 9, 2006, the case is scheduled to be resolved on an expedited basis, pursuant to an agreement between the parties, on June 27, 2006, by way of Plaintiffs' Motion for Summary Judgment. Thus, if ACT were granted leave to intervene, ACT would be joining the case only *three* weeks prior to its resolution and *after* the briefing on Plaintiffs' Motion for Summary Judgment has closed. Consequently, the Court would have to either: (1) allow ACT to intervene and file an untimely opposition brief, thereby necessitating a continuance of the hearing date and creating a delay in the parties' agreed-upon case schedule; or (2) allow ACT to intervene but deny ACT the opportunity to file a brief, thereby negating the very purpose of the intervention. The first option is unfairly prejudicial to the parties, who have specifically asked this Court for an expedited resolution; the latter option is inconsistent with Rule 24.

5

Accordingly, the Court concludes that intervention as a matter of right is not warranted. Significantly, ACT has not provided *any* explanation as to why it waited until such a late date to file its Motion to Intervene. ACT's failure to provide the Court with a valid explanation for its belated Motion to Intervene is simply inexcusable.

### 2. Interest in the Action

ACT has also failed to demonstrate that it has a "significantly protectable interest" in the litigation. Whether an applicant for intervention demonstrates sufficient interest in an action is another "practical, threshold inquiry." *Berg*, 268 F.3d at 818. An applicant has a "significant protectable interest" if: (1) the interest is protected under some law; and (2) there is a relationship between the legally protected interest and the plaintiff's claims. *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). ACT fails to meet the second prong of this two-part test. For example, ACT claims that it has a legally protectable interest because the Clean Air Act provides for public participation in rulemaking and because ACT participated in the District's adoption of the 2003 Particulate Matter (PM-10) Plan that includes the contingency measures submitted to the EPA. ACT also alleges that its members' farming practices will be strongly impacted by any new contingency measures imposed by the EPA. However, this litigation is not related to the *content* of the contingency measures to be imposed by the EPA. Rather, the scope of this litigation is limited to the determination of an appropriate deadline by which EPA must promulgate an FIP containing contingency measures. Further, the resolution of this matter will not undermine ACT's participation in the administrative process. As Plaintiffs point out in their Opposition, whether EPA approves the measures adopted by the District or adopts substitute measures as part of a federal plan, the Agency will continue to proceed through notice and comment rulemaking.

### 3. Impairment of Ability to Protect Interest

For the same reasons, the Court finds unpersuasive ACT's assertion that its interests will be impaired if it is not allowed to intervene in this action. As a general rule, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should . . . be entitled to intervene." *Berg*, 268 F.3d at 822. Here, however, ACT merely asserts, without any support, that "the relief requested by [Plaintiffs] herein will affect [its] interests, including the right to farm, crop choice, and land use issues." However, as *both* Plaintiffs *and* the EPA have pointed out, the requested

1 relief is merely the imposition of a Court-ordered deadline for the adoption of a state or federal
2 implementation plan. ACT has utterly failed to explain how compelling the EPA to meet this deadline
3 will impair its interests.

### 4. Adequate Representation by Existing Party

Finally, ACT has not demonstrated that it is not adequately represented by the existing parties. In determining whether a proposed intervenor's interests would be adequately represented by an existing party, the Court considers: (1) whether the interest of a present party is such that it will undoubtedly make all of the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect. *Berg*, 268 F.3d at 822 (quoting *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 838 (9th Cir.1996)). The burden of showing inadequacy is minimal, and the applicant need only show that representation of its interests by existing parties "may be" inadequate. *Id.* at 823 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10 (1972)).

Here, ACT argues that Plaintiffs will not adequately represent ACT's interests because "Plaintiffs include environmentalists and the medical community who routinely oppose agriculture and business when related to issues of air quality." Again, however, this argument is completely irrelevant to the instant litigation, which does not pertain to the content of the state or federal implementation plans. Further, since ACT has declined to submit a proposed brief, either in support of or in opposition to, Plaintiffs' Motion for Summary Judgment, ACT has failed to demonstrate that it intends to offer any arguments that are *relevant* to this litigation and that have not already been presented to the Court.[8]

Based on the aforementioned arguments, ACT has not sufficiently shown that the factors of Rule 24(a) have been met. Accordingly, the Court hereby DENIES intervention as a matter of right.

### B. Permissive Intervention.

The Court also hereby DENIES permissive intervention. Permissive intervention is appropriate when an applicant has shown that: (1) there are independent grounds for jurisdiction; (2) the motion is

---

[8] ACT's argument that it could not have filed an opposition to Plaintiffs' Motion for Summary Judgment until its Motion to Intervene is granted is belied by the fact that ACT filed a proposed answer to Plaintiffs' Complaint.

7

timely; and (3) its claim or defense, and the main action, have a question of law or a question of fact in common. *Northwest Forest Resource Council*, 82 F.3d at 839.[9]  Here, ACT has not made these specific showings.  Instead, it simply states that the Court should grant permissive intervention because ACT has a "direct interest and involvement in the promulgation of the 2003 Plan, and the subsequent PM-10 Plans submitted by the District to EPA."  However, because the Court finds that ACT's Motion to Intervene is untimely and that any further filings by ACT would either be irrelevant or duplicative of the other parties' submissions to the Court, the Court concludes that permissive intervention would impair the efficiency of the litigation and is therefore inappropriate. *See, e.g., California v. Tahoe Regional Planning Agency*, 792 F.2d 775, 778-79 (9th Cir. 1986); *see also Donnelly*, 159 F.3d at 412 ("In exercising its discretion, the district court must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties.").

## **CONCLUSION**

IT IS HEREBY ORDERED THAT Air Coalition Team's Motion to Intervene [Docket No. 48] is DENIED its entirety.

IT IS FURTHER ORDERED THAT Defendants' Motion to Appear by Telephone [Docket No. 70] is DENIED AS MOOT.

IT IS SO ORDERED.

Dated: 6/2/06

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

---

[9] Even if the applicant satisfies the threshold requirements, the Court still has discretion to deny permissive intervention. *Donnelly*, 159 F.3d at 412.